**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| S.M., a minor, by her parents and next friends, *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 19-2096 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 10, 12 |
| | : | | |
| DISTRICT OF COLUMBIA, | : | | |
| | : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**

**DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT**

**I.  INTRODUCTION**

In this case brought pursuant to the Individuals with Disabilities Education Act, Plaintiffs, on behalf of their daughter S.M., challenge an administrative decision that rejected their claim that the District of Columbia Public Schools ("DCPS") denied S.M. a free appropriate public education.  Plaintiffs argue that the individualized education program ("IEP") developed by DCPS for S.M. in September of 2018 did not provide sufficient special education services for their daughter.  After considering their arguments and hearing testimony from a number of witnesses, an impartial hearing officer determined that DCPS did provide S.M. with a free appropriate public education.  Through this lawsuit, Plaintiffs claim that the hearing officer erred by failing to appropriately weigh the evidence of S.M.'s academic progress and the testimony offered by the various expert witnesses.  The parties have moved for summary judgment based on the administrative record.  Because the Court finds that the impartial hearing officer reasonably concluded that DCPS offered S.M. a free appropriate public education, and for the

reasons set forth below, Plaintiffs' motion for summary judgment is denied and Defendant District of Columbia's (the "District") cross motion for summary judgment is granted.

## II.  BACKGROUND

### A.  The Individuals with Disabilities Education Act

The Individuals with Disabilities Education Act ("IDEA"), codified at 20 U.S.C. §§ 1400–1482, is designed to "ensure that every child has a meaningful opportunity to benefit from public education." *Boose v. District of Columbia*, 786 F.3d 1054, 1056 (D.C. Cir. 2015). The statute provides that every child with a disability in this country is entitled to a free appropriate public education, or FAPE, that must be tailored to "emphasize[] special education and related services designed to meet [the student's] unique needs." 20 U.S.C. § 1400(d)(1)(A).

An IEP is the "primary vehicle" for implementing the FAPE entitlement under the IDEA. *Lesesne ex rel. B.F. v. District of Columbia*, 447 F.3d 828, 830 (D.C. Cir. 2006) (quoting *Honig v. Doe*, 484 U.S. 305, 311 (1988)).  An IEP is a written document that outlines the student's present academic achievement, the student's disability, academic and functional goals, and special education and related services to be provided to the student, among other requirements detailed by federal regulations.  *See* 34 C.F.R. § 300.320; *see also Lesesne*, 447 F.3d at 830 (stating that an IEP "sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives" (quoting *Honig*, 484 U.S. at 311)).  An IEP should be tailored to "the unique circumstances of the child for whom it was created." *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist.*, 137 S. Ct. 988, 1001 (2017).

Generally, IEPs are developed collaboratively with a team that includes school administrators, educators, and parents and often includes others, such as medical professionals, to assist in designing the most effective program for the student. *See* 34 C.F.R. § 300.321. The team, however, may not always agree on the contents of an IEP or the proposed plan forward. A parent or guardian who believes that an IEP as drafted does not provide the student with a FAPE has a "right to seek review of any decisions [he or she] think[s] inappropriate." *District of Columbia v. Doe*, 611 F.3d 888, 890 (D.C. Cir. 2010) (quotations omitted). Review of an IEP begins with the filing of an administrative due process complaint and is followed by a due process hearing conducted by an impartial hearing officer. 20 U.S.C. § 1415(f). Administrative decisions of an impartial hearing officer, referred to as hearing officer determinations ("HOD"), can then be appealed through judicial proceedings in a U.S. District Court. *See id.* § 1415(i)(2)(A).

### B. Factual Background

At the time Plaintiffs filed the Complaint, S.M. was an eleven-year-old student who resided in the District of Columbia. Compl. ¶ 4. S.M. has been diagnosed with attention deficit hyperactivity disorder ("ADHD") and Specific Learning Disorder ("SLD") with impairments in reading and mathematics. A.R. 11. S.M. attended Lafayette Elementary School ("Lafayette") from 2013 until 2018, Compl. ¶¶ 5–8, 18, when her parents unilaterally enrolled her at the Lab School of Washington ("Lab School"), a private school that specializes in educating students with learning disabilities. A.R. 13. S.M. first began receiving special education services at the beginning of the 2014-2015 school year. A.R. 6.

At the beginning of the 2017-2018 school year, S.M.'s IEP provided for placement in a general education setting with 2.5 hours per week of special education services in math, reading,

3

and written expression. A.R. 6–7. Based on her progress in the fall of 2017, S.M.'s parents and teachers agreed in December 2017 that S.M. required more special education support. A.R. 7. An IEP team convened on December 12, 2017 and developed a new plan that provided for 19.5 hours per week of special education services in reading, math, and written expression outside general education. A.R. 8. The December 2017 IEP also called for 120 minutes per month of behavioral support services. A.R. 8. S.M. would be placed in a Specific Learning Support ("SLS") classroom for her special education services, but would still attend elective classes, lunch, and recess with typically developing peers. A.R. 8. S.M. would begin each day in a general education classroom for forty-five minutes to work on a computer instructional program for math. A.R. 8. S.M.'s mother agreed with the December 2017 IEP. A.R. 8.

Still concerned with S.M.'s progress, her father requested an independent educational evaluation ("IEE") in March of 2018. A.R. 9. The results of the IEE, conducted by Dr. Robert Foster, indicated that S.M. performed below average in a number of different social and academic areas. *See* A.R. 10–11, 28. Dr. Foster diagnosed S.M. with ADHD and SLD with impairments in reading and mathematics. A.R. 11. S.M.'s test scores from the 2017-2018 school year indicated that she continued to fall behind her peers. On the Text Reading and Comprehension ("TRC") assessment, she scored at level "H" at the beginning of the year and the end of the year—a score well behind grade level expectations. A.R. 10. On the Dynamic Indicators of Basic Early Literacy Skills ("DIBELS") assessment, S.M. showed slight improvement in oral reading fluency and reading comprehension but remained well below grade level. A.R. 10. In math, on the i-Ready assessment, S.M. actually scored lower at the end of the year than she did at the beginning. A.R. 10. In response to the 2017-2018 school year, Plaintiffs placed S.M. at the Lab School for a summer tutorial program. A.R. 11, 28. S.M.'s parents

4

considered her time at the Lab School "to be the most positive learning experience [S.M.] had ever had." A.R. 11.

In September 2018, S.M.'s IEP team convened to review her IEP.[1]  A.R. 13; *see also* A.R. 103–37.  The September 2018 IEP did not alter the special education services offered to S.M.—just as in the December 2017 IEP, S.M. would receive 19.5 hours of special education in the SLS classroom, 120 minutes per month of behavioral support services, and would attend elective classes, lunch, and recess with her typically developing peers.  A.R. 15; A.R. 127.  Plaintiffs disagreed with offering S.M. the same services and expressed a need for more special education support.  A.R. 15.  Plaintiffs requested that DCPS fund S.M.'s placement at the Lab School.  A.R. 15.  S.M. remained at the Lab School for the duration of the 2018-2019 school year.  Compl. ¶ 18.

Plaintiffs challenged the September 2018 IEP in an administrative due process hearing before Hearing Officer Peter Vaden.  A.R. 3.  Plaintiffs presented four witnesses, including S.M.'s mother and two experts, Amy Mounce, an educational consultant, and Dr. Foster, who had conducted the IEE.  A.R. 4, 28.  Ms. Mounce, who was part of the September 2018 IEP team, testified that she observed S.M. in a classroom setting at the Lab School for approximately five hours, *see* A.R. 378, and opined that, based on her expertise and observations, S.M. needed a more restrictive setting than what the September 2018 IEP offered, A.R. 410–11.  Dr. Foster, who conducted the IEE and observed S.M. for an hour at Lafayette, A.R. 464, testified that he disagreed with the September 2018 IEP and that S.M. needed more special education services

---

[1] Prior to the IEP team convening, Plaintiffs had unilaterally placed S.M. at the Lab School for the 2018-2019 school year.  A.R. 13.  Before the hearing officer, Plaintiffs only sought reimbursement for tuition paid after September 17, 2018, which is when the IEP team convened and issued a new IEP for S.M.  *See* A.R. 18.

5

and a more restrictive environment, A.R. 463. Dr. Foster did acknowledge that S.M. could benefit from interaction with nondisabled peers, but that those benefits could be outweighed by the consequences of not having a restrictive enough environment. A.R. 474–76.

DCPS presented five witnesses, including her special education teacher, her clinical social worker, and the principal of Lafayette. A.R. 4. Ashley Swartz, S.M.'s special education teacher at Lafayette, testified about her observations of S.M. in the classroom, though she only instructed S.M. for about a month at the end of the 2017-2018 school year. A.R. 612. She had filled out an IEP progress report for S.M. that indicated S.M. was "progressing in all goals, [but] [was not] yet mastering any of those goals." A.R. 614; *see also* A.R. 315–22 (IEP Progress Report – Annual Goals). Sophia Carre, S.M.'s clinical social worker at Lafayette, testified that S.M. had progressed in all her behavioral goals by the end of the 2017-2018 school year. A.R. 672. Ms. Carre said that S.M. engaged in her sessions, "never refused any sessions," and "was pretty willing to learn some skills, express some of her thoughts, and . . . follow along with the protocol." A.R. 672. Ms. Carre believed that S.M. could benefit from practicing behavioral and social strategies in the general education setting. A.R. 674. Dr. Carrie Broquard, the principal of Lafayette who participated in both the December 2017 and September 2018 IEP meetings, testified that she has known S.M. and her parents for four years. A.R. 739–40. Dr. Broquard testified that S.M. had a social network of friends and was very successful in her elective classes with her general education peers. A.R. 745. Dr. Broquard stated that because S.M. had only been in the SLS classroom from January 2018 to June 2018, the September 2018 IEP team did not have the data to show that S.M. needed a more restrictive environment. A.R. 750. Moreover, Dr. Broquard testified that S.M. was progressing towards her IEP goals. A.R. 750.

Hearing Officer Vaden issued his HOD on April 18, 2019 (the "April 2019 HOD"). A.R. 3. The issue submitted for determination was:

> Whether the September 2018 IEP and educational placement proposed by DCPS are inappropriate for [S.M.] because the IEP does not provide [S.M.] with sufficient special education instruction outside of general education in order for [S.M.] to make meaningful progress and because [S.M.] suffers emotionally from splitting school time between two different, inside/outside of general education environments.

A.R. 5–6. Hearing Officer Vaden made findings of fact, A.R. 6–16, and conclusions of law, A.R. 16–26, and ultimately determined that DCPS sustained its burden to show that the September 2018 IEP was reasonably calculated to enable S.M. to make progress in light of her circumstances, A.R. 26. Hearing Officer Vaden found the DCPS witnesses more persuasive than the expert witnesses presented by Plaintiffs because of their greater familiarity with S.M.'s circumstances. A.R. 24. He acknowledged that the academic assessments showed that S.M. struggled academically but found that the spring 2018 IEP progress report and testimony of the witnesses showed that S.M. was making progress. A.R. 24–25. Hearing Officer Vaden accepted that S.M. can likely receive a better program at the private Lab School, but found that the IDEA only requires a reasonable placement, not necessarily ideal. A.R. 25–26. Because Hearing Officer Vaden concluded that DCPS offered S.M. a FAPE, he declined to award Plaintiffs their requested tuition reimbursement. A.R. 26.

Plaintiffs' Complaint claims that DCPS failed to provide S.M. a FAPE for the 2018-2019 school year, Compl. ¶ 43, and that the Hearing Officer Vaden erred when he found that S.M.'s September 2018 IEP was sufficient "despite significant evidence to the contrary," *id.* ¶ 45. Plaintiffs seek an order stating that Hearing Officer Vaden erred and that DCPS denied S.M. a FAPE for the 2018-2019 school year. *Id.* ¶ 48. Plaintiffs request reimbursement for the tuition and related services expended in educating S.M. at the Lab School. *Id.* After submission of the

7

administrative record, *see* A.R., ECF Nos. 7, 8, the parties both moved for summary judgment, *see* Pls.' Mem. Supp. Mot. Summ. J. ("Pls.' Mem."), ECF No. 10-1; Def.'s Cross Mot. Summ. J. ("Def.'s Mot."), ECF No. 12. Those motions are ripe for decision.

### III. LEGAL STANDARD

"Although motions for review of an HOD are called motions for summary judgment, the court does not follow 'a true summary judgment procedure.'" *Middleton v. District of Columbia*, 312 F. Supp. 3d 113, 128 (D.D.C. 2018) (quoting *L.R.L. ex rel. Lomax v. District of Columbia*, 896 F. Supp. 2d 69, 73 (D.D.C. 2012)). Instead, a motion for summary judgment in an IDEA administrative review case "operates as a motion for judgment based on the evidence comprising the record and any additional evidence the Court may receive." *D.R. ex rel. Robinson v. District of Columbia*, 637 F. Supp. 2d 11, 16 (D.D.C. 2009). Where, as here, "no new evidence has been submitted . . . the Court will treat the parties' cross-motions for summary judgment as motions for judgment based on the administrative record." *Collette v. District of Columbia*, No. 18-CV-1104, 2019 WL 3502927, at *6 (D.D.C. Aug. 1, 2019) (quoting *G.G. ex rel. Gersten v. District of Columbia*, 924 F. Supp. 2d 69, 73 (D.D.C. 2012)). This procedure is essentially "a bench trial based on a stipulated record." *N.W. v. District of Columbia*, 253 F. Supp. 3d 5, 12 (D.D.C. 2017) (quoting *Lomax*, 896 F. Supp.2d at 73).

A court reviewing an administrative IDEA determination "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C); *see also* 34 C.F.R. § 300.516(c). It is the responsibility of the courts to give "due weight" to the administrative findings, and refrain from "substitut[ing] their own notions of sound educational policy for those of the school authorities

which they review." *Bd. of Educ. v. Rowley,* 458 U.S. 176, 206 (1982).  However, the D.C. Circuit has held that "less deference than is conventional in administrative proceedings" is the correct standard of review.  *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 521 (D.C. Cir. 2005) (internal quotations omitted).  The burden of proof lies with the party challenging the administrative determination, who must "at least take on the burden of persuading the court that the hearing officer was wrong, and that a court upsetting the officer's decision must at least explain its basis for doing so." *Kerkam v. Superintendent D.C. Pub. Schs.*, 931 F.2d 84, 86 (D.C. Cir. 1991) (citations omitted).  Accordingly, although courts in this district have found that a hearing decision "without reasoned and specific findings deserves little deference," *Reid* , 401 F.3d at 521  (citing *Kerkam*, 931 F.2d at 87), a hearing officer's decision is only reversed when "[p]laintiffs have shown by a preponderance of the evidence that he was wrong," *A.I. ex rel. Iapalucci v. District of Columbia*, 402 F. Supp. 2d 152, 170 (D.D.C. 2005) (quoting *Block v. District of Columbia*, 748 F. Supp. 891, 896 (D.D.C. 1990)).

## IV.  ANALYSIS

Plaintiffs put forth three primary arguments to support their claim that the April 2019 HOD should be reversed.  First, Plaintiffs argue that Hearing Officer Vaden ignored the objective data showing that S.M. failed to make academic progress under the December 2017 IEP and, therefore, he erred by concluding that continuing the same special education services in the September 2018 IEP was appropriate.  Second, Plaintiffs claim that Hearing Officer Vaden inappropriately credited anecdotal testimony.  Third, Plaintiffs argue that Hearing Officer Vaden failed to credit the testimony of their expert witnesses.  The Plaintiffs also suggest that because DCPS agreed to place S.M. at the Lab School for the 2019-2020 school year, Hearing Officer

Vaden's decision about the September 2018 IEP must be wrong. The Court addresses each argument below, considering the second and third points together.

## A.  Academic Progress

Plaintiffs first argue that Hearing Officer Vaden "ignored objective data that S.M. had not made academic progress." Pls.' Mem. at 10. Plaintiffs point to the results of multiple academic assessment methods used to evaluate S.M.'s progress in reading, writing, and math. *See id.* at 11–12. In reading, for example, under the TRC assessment, S.M. scored at level "H" at the beginning of the 2017-2018 school year and ended at the same level, even though students at grade-level should have scored at level "O" at the beginning of the year and at level "R" at the end. *See id.* at 11. Plaintiffs state that although S.M. showed modest gains in reading fluency, *see id.*, she actually regressed under the i-Ready math assessment, *see id*. at 12. Plaintiffs then quote portions of the cross examination of Ms. Swartz that acknowledge S.M.'s performance on these academic assessments. *See id.* at 12–14. The District argues that the test scores do not paint the whole picture and that Hearing Officer Vaden appropriately weighed the totality of the evidence to determine that the September 2018 IEP was appropriate. *See* Def.'s Mot. at 9–17. Specifically, the District points to S.M.'s spring IEP progress report, "which documented that S.M. was making measurable progress after only two reporting periods in the SLS classroom." *Id.* at 14.

As an initial matter, the Court notes that Hearing Officer Vaden did not ignore S.M.'s academic assessments. In his findings of fact, Hearing Officer Vaden specifically noted S.M.'s scores on the TRC assessment, the results of the DIBELS assessment, and her scores on the i-Ready math assessment. A.R. 10. Hearing Officer Vaden acknowledged that S.M.'s scores "did not improve from the beginning of year to end of year" and that her "scores remained well below

grade level." A.R. 10.  Furthermore, Hearing Officer Vaden found that Plaintiffs' "concern over [S.M.'s] lack of improvement on most of the DCPS standardized tests [was] certainly valid." A.R. 24.  In short, Hearing Officer Vaden did not ignore the results of the academic assessments in rendering his decision.  He made explicit findings of fact about S.M.'s performance on standardized assessments.

The Court finds, however, that Hearing Officer Vaden appropriately considered the evidence of S.M.'s academic progress in the context of all the other evidence presented at the due process hearing.  In addition to the academic assessments, Hearing Officer Vaden considered the short period of time S.M. had been in the SLS classroom, A.R. 24, the spring 2018 IEP progress report that documented that S.M. was "making measurable progress,"[2] A.R. 24–25, and the testimony offered by the DCPS witnesses, A.R. 24–25.  Hearing Officer Vaden found that "measurable progress" on S.M.'s IEP goals found corroborating support in "the first hand observations of [the DCPS witnesses]."  A.R. 25.  Additionally, Hearing Officer Vaden concluded, based on witness testimony, that S.M. benefitted from her time with typically developing peers.  A.R. 25.  In light of the testimony in the record, this conclusion was reasonable.  Hearing Officer Vaden had an obligation to consider and weigh all the evidence in the record before rendering his decision.  *See Pinto v. District of Columbia*, 69 F. Supp. 3d 275, 286 (D.D.C. 2014) (upholding hearing officer decisions where he "considered all of the evidence

---

[2] Plaintiffs allege that Hearing Officer Vaden's finding that the accuracy of the spring IEP progress report was not in dispute was "erroneous" because Plaintiffs called into question the contents of the report at the due process hearing.  Pls.' Mem. at 19 n.2.  Upon review of the administrative record, the Court finds that Plaintiffs had an opportunity to question Ms. Swartz, who created the progress report, about its contents but chose not to explore the report's factual basis.  *See* A.R. 638–55 (cross examination of Ms. Swartz).  The Court therefore concludes that Hearing Officer Vaden did not err when stating that no party disputed the accuracy of the spring IEP progress report.

offered during the hearing"); *Q.C-C. v. District of Columbia*, 164 F. Supp. 3d 35, 54 (D.D.C. 2016) (finding hearing officer erred by failing "to consider all of the evidence").

Plaintiffs suggest that Hearing Officer Vaden should have ended his inquiry upon review of the academic assessments or discarded any evidence showing that S.M. did make progress. *See* Pls.' Mem. at 14. The Court disagrees. Given the limited data available relevant to S.M.'s time in the SLS classroom (because S.M. had only spent a short time in that setting), it was reasonable for Hearing Officer Vaden to conclude that the growth shown in the spring IEP progress report and confirmed by the DCPS witnesses outweighed S.M.'s limited progress on the standardized tests. *Endrew*, 137 S. Ct. at 999 ("Any review of an IEP must appreciate that the question is whether the IEP is *reasonable*, not whether the court regards it as ideal." (emphasis in original)). In the context of all the evidence presented, the Court finds that Plaintiffs have failed to show that Hearing Officer Vaden's treatment of the educational assessments was unreasonable.

### B. Witness Testimony

Plaintiffs' second and third primary arguments speak to the same issue: whether Hearing Officer Vaden appropriately weighed witness testimony. Plaintiffs state that Hearing Officer Vaden inappropriately credited some testimony that they characterize as "anecdotal." Pls.' Mem. at 15. For example, they claim that Hearing Officer Vaden gave too much weight to the testimony of Dr. Broquard, who testified that S.M. succeeded and enjoyed the SLS classroom and benefited from interaction with her typically developing peers. *Id.* Plaintiffs point to other testimony that they say contradicts Dr. Broquard's perception and instead shows that S.M. had social and emotional difficulties in a general education environment. *Id.* at 16–19. Plaintiffs then argue that Hearing Officer Vaden inappropriately failed to credit the testimony of their

expert witnesses, who testified that S.M. did not progress academically and needed specialized, full-time instruction outside the general education environment. *Id.* at 20–22. The District responds that Dr. Broquard has known S.M. for many years and has observed her on a regular basis. Def.'s Mot. at 9–10. It makes sense, the District reasons, to give Dr. Broquard's and the other DCPS witnesses' testimony more weight than Plaintiff's experts because of their experts' limited exposure to S.M. *Id.* at 13. The District argues that the Court should defer to the credibility determinations made by Hearing Officer Vaden. *Id.* at 16.

The Court agrees with the District. Hearing Officer Vaden's credibility determinations benefit from first-hand observation of live testimony; the Court can only review transcripts. Although the cases cited by the District do not involve the IDEA, the reasoning applies to the review of Hearing Officer Vaden's credibility determinations all the same. In *Anderson v. City of Bessemer City, N.C.*, the Supreme Court explained that credibility determinations are entitled great weight because "only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." 470 U.S. 564, 575 (1985). For this reason, when a decision is based on "credit[ing] the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." *Id.* The Court finds that the DCPS witnesses did testify in a coherent way about S.M.'s progress in the SLS classroom. The education assessments do not contradict the testimony of the DCPS witnesses, which showed that S.M. benefited from her time with typically developing peers and progressed on her IEP goals throughout the spring semester. As such, the Court finds no reason to disturb Hearing Officer Vaden's credibility determinations.

Moreover, Hearing Officer Vaden's conclusions are reasonable in light of the evidence in the record. Hearing Officer Vaden stated:

> I find the DCPS witnesses more persuasive for several reasons. First, most of them had known [S.M.] for the entire 2017-2018 school year or longer, and were very familiar with [S.M.'s] deficits and special education needs. [Ms. Mounce], by contrast, only became involved in August 2018 and never observed [S.M.] in the [Lafayette] setting. This may explain [Ms. Mounce's] opinion that [S.M.] needed a special education setting for lunch, recess and transitions, when the evidence was overwhelming that at [Lafayette], [S.M.] flourished when placed with general education peers for nonacademic parts of the school day.

A.R. 24. Hearing Officer Vaden also stated that Dr. Foster's testimony was not persuasive because he "only observed [S.M.] for one hour at [Lafayette] and then, only in the special education classroom. [Dr. Broquard], who saw [S.M.] in transitions several times a week, observed that [S.M.] was always smiling and enjoyed time with nondisabled peers." A.R. 25. Giving more weight to the testimony of witnesses who spent far more time with S.M. is perfectly reasonable, especially because the spring IEP progress report corroborates their observations.

### C.  Post-Hearing Placement

Finally, Plaintiffs suggest that because DCPS offered S.M. an IEP that placed her at the Lab School after the April 2019 HOD issued, Hearing Officer Vaden's determination that the September 2018 IEP was appropriate must be wrong. Pls.' Mem. at 20. Plaintiffs argue that the post-hearing placement "sheds light on whether the IEP was objectively reasonable at the time it was promulgated." Pls.' Reply at 7, ECF No. 13 (quoting *Z.B. v. District of Columbia*, 888 F.3d 515, 524 (D.C. Cir. 2018) (internal quotations omitted). The District argues that the post-hearing placement at the Lab School is irrelevant to this case because "the measure and adequacy of an IEP can only be determined as of the time it is offered to the student." Def.'s Mot. at 17–18 (quoting *Moradnejad v. District of Columbia*, 177 F. Supp. 3d 260, 275 (D.D.C. 2016) (quoting *S.S. v. Howard Rd. Academy*, 585 F. Supp. 2d 56, 66 (D.D.C. 2008)).

14

The Court finds that the post-hearing placement at the Lab School is of only limited relevance to the present dispute. The IEP team developed the September 2018 IEP after S.M. had spent only a short time in the SLS classroom, whereas she had spent the preceding three years in a general education setting. A.R. 24. The IEP team possessed information about S.M.'s academic progress in the form of standardized test scores and a spring IEP progress report, noting progress towards all IEP goals. A.R. 24–25. S.M. appeared to benefit from and enjoy her time with typically developing peers and the IEP team had an obligation to place her in the least restrictive environment. A.R. 24–25 (citing *Z.B.*, 888 F.3d at 528). Based on S.M.'s progress and struggles set forth in the record, the September 2018 IEP and the placement at Lafayette represent a reasonable plan to meet S.M.'s needs. At some point after, a line was crossed and S.M.'s IEP team implicitly determined that Lafayette could no longer appropriately serve S.M. But there is no indication that line had been crossed when the team prepared the September 2018 IEP. To the contrary, as explained above, there was reason for optimism that progress was being made in the SLS class and that S.M. benefitted from a placement with typically developing peers. *See Z.B.*, 888 F.3d at 524 ("The key inquiry regarding an IEP's substantive adequacy is whether, *taking account of what the school knew or reasonably should have known of a student's needs at the time*, the IEP it offered was reasonably calculated to enable the specific student's progress." (emphasis added)). Accordingly, the Court finds that the post-hearing placement is not sufficiently compelling to undermine Hearing Officer Vaden's determination.[3]

---

[3] Because the Court has determined that DCPS did not deny S.M. a FAPE for the 2018-2019 school year, it does not further consider Plaintiffs' request for tuition reimbursement. *See Leggett v. District of Columbia*, 793 F.3d 59, 67 (D.C. Cir. 2015) (requiring tuition reimbursement if "school officials failed to offer the child a [FAPE]").

## V.  CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment (ECF No. 10) is **DENIED**.  Defendant's cross motion for summary judgment (ECF No. 12) is **GRANTED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  December 8, 2020                                                              RUDOLPH CONTRERAS
                                                                                                          United States District Judge